**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **PATSY CHIRICO,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL NO. 3:10CV689** |
| **MICHAEL J. ASTRUE, Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Patsy Chirico, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability ("DIB") benefits. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (ECF No. 9) be GRANTED; that Defendant's motion for summary judgment (ECF No. 11) be DENIED; and that the final decision of the Commissioner be

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case. Rules 5 and 7(C).

REVERSED AND REMANDED for further administrative proceedings consistent with this report and recommendation.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on March 2, 2008, claiming disability due to vertigo[2], hearing loss, fibromyalgia[3], migraines[4], and osteoarthritis[5], and obsessive-compulsive disorder[6] with an alleged onset date of November 5, 2006. (R. at 13). The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[7] (R. at 11). On June 1, 2009, represented by counsel, Plaintiff testified before an ALJ. (R. at 21-61.). On November 9, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 10-19.)

---

2 "Vertigo" is defined as an illusory sense that either the environment or one's own body is revolving. Dorland's Illustrated Medical Dictionary 2051 (32nd ed. 2012).

3 "Fibromyalgia" is defined as pain and stiffness in the muscles and joints that either is diffuse or has multiple trigger points. Dorland's Illustrated Medical Dictionary 703.

4 "Migraine" is defined as an often familial symptom complex of periodic attacks of vascular headache, usually temporal and unilateral in onset, commonly associated with irritability, nausea, vomiting, constipation or diarrhea, and often photophobia. Attacks are preceded by constriction of the cranial arteries, often with resultant prodromal sensory symptoms and the spreading depression of Leao: the migranes themselves commence with the vasodilation that follows. Dorland's Illustrated Medical Dictionary 1166.

5 "Osteoarthritis" is defined as a noninflammatory degenerative joint disease seem mainly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. Dorland's Illustrated Medical Dictionary 1344.

6 "Obsessive compulsive disorder" occurs where one has a tendency to perform certain repetitive acts or ritualistic behavior to relieve anxiety, as in obsessive-compulsive neurosis (e.g., a compulsive, ritualistic need to wash one's hands many dozens of times per day). Stedman's Medical Dictionary 1249 (27th ed. 2000).

7 Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

Plaintiff subsequently asked the Appeals Council to review the ALJ's decision dated November 9, 2009. (R. at 4). The Appeals Council granted Plaintiff's request for review on June 11, 2010, but denied her request. (R. at 4). The Appeals Council found that she was not disabled under the Act for the same reasons as the ALJ. (R. at 6). The Appeals Council adopted the ALJ's decision in its entirety, excepting only the prior "date last insured," which was found to be March 31, 2012. (R. at 5). The Appeals Council's decision constitutes the final decision of the Commissioner subject to review by this court.

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Appeals Council's decision to deny benefits, the Court is limited to determining whether the ALJ's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the

Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[8] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical

[8] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. C 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. C 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[9] based on an assessment of the claimant's residual functional capacity ("RFC")[10] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id.

If the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and

---

[9] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[10] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

**IV. ANALYSIS**

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 5.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of a vertigo, history of hearing loss, fibromyalgia, migraine headaches, osteoarthritis, and obsessive compulsive disorder, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 5.) The ALJ next determined that Plaintiff had the RFC to perform light work. (R. at 5.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a phlebotomist due to her exertional and nonexertional limitations. (R. at 6

& 21.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 19-20.) Specifically, the ALJ found that Plaintiff could work as a cashier, mail sorter, or ticket taker. (R. at 19.) Accordingly, the ALJ concluded that Plaintiff was not disabled, but instead employable such that she was not entitled to benefits. (R. at 19-20.)

Plaintiff seeks reversal and remand for an awarding of benefits or, in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 1) In support of her position, Plaintiff argues that: (1) the ALJ improperly discounted the opinions of Plaintiff's treating physicians; and/or (2) the ALJ erred in failing to include any limitations attributable to certain physical and mental impairments found by the Commissioner to be severe. (Pl.'s Mem. at 4.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed.[11] (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 2-18.)

**A. Plaintiff contends that the ALJ failed to assess any limitations attributable to some of Plaintiff's physical and mental impairments.**

Plaintiff contends that the ALJ failed to follow the so-called "treating physician rule" with respect to the opinions of two of her treating physicians and the consulting state agency physicians. (Pl.'s Mem. at 8-15.) Plaintiff argues that the ALJ "completely failed to acknowledge" the opinions of Dr. Quick and Dr. Tran, both of whom were treating physicians. (Pl.'s Mem. at 15.) Plaintiff also argues that the ALJ erred in assigning "appropriate weight" to

[11] Plaintiff's contends that, by assigning to Plaintiff an erroneous DLI, the ALJ cast into doubt the entire decision to deny benefits. However, this issue was resolved by the Appeals Council when they revised Plaintiff's DLI to March 31, 2012.

the opinions of another treating psychologist, Dr. Wells, without expounding upon the meaning and effect of that designation. (Pl.'s Mem. at 15.) More broadly, Plaintiff contends that the reports of all treating specialists were entitled to controlling weight or, in the alternative, special deference, and that the ALJ's failure to decide as such or explain with specificity his rationale in refusing to do so was reversible error. (Pl.'s Mem. at 15.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are internally inconsistent with each other or other evidence, the ALJ must evaluate the opinions and assign their respective weights to properly analyze the evidence. 20 C.F.R. § 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's

opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. ' 404.1527(d)(3)-(4), (e).

In his decision, the ALJ considered the opinion of Dr. Wells, according it "appropriate weight" because it was "not consistent with the evidence overall but appear[ed] to be based on the [Plaintiff's] subjective complaints." (R. at 18.) The ALJ similarly considered the opinions of both Drs. Quick and Tran, sparsely discussing each opinion, yet affording neither a specified weight nor attendant explanation for the lack thereof. (R. at 11-20.)

As stated by this Court in Day v. Astrue:

> When an ALJ evaluates an opinion of any medical source-whether treating or non[-]treating-he is required to "explain in the decision the weight given" thereto and "*give good reasons in [his] . . . decision for the weight*." 20 C.F.R. §§ 416.927(f)(2)(ii); 416.927(d)(2). If the ALJ does not assign weight and provide persuasive reasons for that assignment, then the court is unable to determine whether the ALJ's conclusion is substantially supported by the evidence of record. See Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir.1984) ("We cannot determine if findings are supported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence."). Absent a statement of the ALJ's reasons for his assignment of a particular weight, the Court cannot and should not infer from the record reasons to support the ALJ's conclusion. See Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir.2004) ("[T]he magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's opinion should have been evaluated based solely on the reasons stated in the decision.").

No. 3:10cv14, 2010 U.S. Dist. LEXIS 69164, at *19-20 (E.D. Va. June 16, 2010) (quoting Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir.1984)).

In that case, this court was confronted with a situation in which the ALJ, in deciding Plaintiff's claims, assigned to a treating physician "weight," without further clarifying said weight or providing guidance as to its value relative to other medical opinions. Id. Because of this failure to provide appropriate guidance, this Court held that "[t]he ALJ's failure to clearly

articulate the weight assigned to [the treating physician's] opinion and his reasons for assigning that weight is reversible error." Id. Accordingly, this Court reversed and remanded that case for reconsideration of the treating physician's opinions. Id.

Much like the ALJ in Day v. Astrue, the ALJ here utilized a vague and imprecise term in assigning weight to a treating physician's opinion, in this case "appropriate weight." (R. at 18). This designation is too vague to enable this court to determine whether the ALJ's decision was supported by substantial evidence. Although the ALJ did, in fact, explain his decision to accord Dr. Wells' opinions "appropriate weight," namely that they appeared to be based on the claimant's subjective complaints and were not consistent with the evidence, the fact of the matter is that "appropriate weight" does not sufficiently define the weight being given. As pointed out by Plaintiff, assigning "appropriate weight" necessarily resorts to circular reasoning, as the ALJ is required by law to assign appropriate weight to any and all medical evidence. (Pl's Mem. at 15). Absent a statement of the ALJ's reasons for his assignment of a particular weight, the Court cannot and should not infer from the record reasons to support the ALJ's conclusion. See Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir.2004).

Similarly, in failing to explain in the ALJ's decision, the weight accorded to either Dr. Quick or Dr. Tran, this court is unable to determine whether the ALJ's decision was supported by substantial evidence. Contrary to Defendant's assertion that Dr. Tran's opinion was justifiably accorded no weight, the ALJ failed entirely to indicate the quality of the weight accorded to Dr. Tran's opinion. (R. at 16-20.) The same goes for the opinions of Dr. Quick. Though the ALJ did cite to an exhibit containing medical records created by Dr. Quick, mentioning his opinions in doing so, at no point was an affirmative statement made explicitly

indicating the weight afforded to these opinions. (R. at 17-18.) Again, this omission precludes a determination of whether the ALJ's decision was supported by substantial evidence.

Even where a treating physician's opinion is not accorded controlling weight, it must be evaluated using the factors articulated in 20 C.F.R. §§ 404.1527(d) and 416.927(d), which include: (1) the examining relationship between the individual and the medical source; (2) the treatment relationship, including its length, nature, and extent as well as frequency of examination; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the medical source is a specialist and the opinion concerns issues related to his or her field of specialty; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d); 416.927(d). Here, there is no indication in the record that the ALJ engaged in any such analysis related to the opinions of Drs. Quick and Trans. (R. at 16-20.)

As failure of an ALJ to clearly articulate the weight assigned to a treating physician's opinion and his reasons for assigning that weight is reversible error, the court, accordingly, recommends that the decision of the ALJ be reversed and remanded for reconsideration.[12]

**V. CONCLUSION**

Although the Court concludes that the record does not provide substantial evidence to sustain the ALJ's treating physician analysis, the Court is unable at the same time to recommend an outright award of benefits. Instead, it is proper for the ALJ to weigh the opinions of the physicians, taking into account all evidence on the record, and re-issue a revised RFC analysis. If the RFC analysis is materially altered by the ALJ's determinations made pursuant to this

[12] It is not necessary for the court to reach the other issues raised by the parties in this case. After the ALJ properly assigns weight to the treating physicians' opinions, those issues may become moot.

remand, it is proper for the ALJ to then re-examine his prior determination that Plaintiff is capable of performing her past relevant work in light of the new RFC analysis.

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (ECF No. 9) be GRANTED; that Defendant's motion for summary judgment (ECF No. 11) be DENIED; and, that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings consistent with this report and recommendation.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
Dennis W. Dohnal
United States Magistrate Judge

Date: November 21, 2011
Richmond, Virginia